**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PAUL S. FRANKS,** | ) | **CASE NO. 1:08 CV 650** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **TRENT PERFORMANCE, LLC, *et al.*,** | ) | <u>**Memorandum of Opinion and Order**</u> |
| | ) | |
| **Defendants.** | ) | |

<u>**INTRODUCTION**</u>

This matter is before the Court on two motions:  (1) defendants Trent Performance LLC,

Trent Olds-Cadillac-Buick, Inc., G.L. Deichmann, III and Charley Lewis' motion to dismiss for

lack of personal jurisdiction or to transfer pursuant to 28 U.S.C. § 1404 (Doc. 11); and (2)

defendants Carroll Shelby and Carroll Shelby Licensing, Inc.'s motion to dismiss for lack of

personal jurisdiction (Doc. 6).  This case arises out of a contract for the manufacture and sale of

a custom vehicle entered into between plaintiff Paul S. Franks and defendant Trent Performance.

For the reasons that follow, Trent Performance LLC, Trent Olds-Cadillac-Buick, Inc., G.L.

Deichmann, III and Charley Lewis' motion to dismiss or to transfer (Doc. 11) is GRANTED and

Carroll Shelby and Carroll Shelby Licensing, Inc.'s motion to dismiss (Doc. 6) is GRANTED.

**FACTS**

Plaintiff Paul S. Franks ("Mr. Franks") brings this action against six defendants:  Trent Performance LLC ("Trent Performance"), Trent Olds-Cadillac-Buick, Inc. ("Trent Olds"), D.L. Deichmann, III ("Mr. Deichmann"), Charley Lewis ("Mr. Lewis"), Carroll Shelby ("Mr. Shelby") and Carroll Shelby Licensing, Inc. ("Shelby Licensing").  The following facts are taken from plaintiff's Complaint and the exhibits thereto unless otherwise indicated.

Plaintiff is a resident of Ohio.  Defendants Trent Performance, Trent Olds, Mr. Deichmann and Mr. Lewis  (collectively, the "Trent Defendants") are residents of North Carolina.  Mr. Deichmann provides a declaration stating that Mr. Lewis was a employee of Trent Performance during the relevant time.  Mr. Lewis' title was Vice President/Sales.  Mr. Deichmann's declaration also establishes that he is a member of Trent Performance and a shareholder of Trent Olds.  Mr. Deichmann states he has no property or assets in Ohio and maintains no business interests in Ohio.  He states that the sole business of Trent Olds is as an automobile dealership in New Bern, North Carolina and that the sole place of business of Trent Performance is also New Bern, North Carolina.  He has met plaintiff in person only once - at a car show in Indiana.  Defendants Shelby Licensing and Mr. Shelby (collectively, the "Shelby Defendants") are not residents of Ohio.  Shelby Licensing is incorporated in Texas and has its principal place of business in California.  Mr. Shelby is the founder of Shelby Licensing and also resides in California.

On July 28, 2005, plaintiff entered into a contract with defendant Trent Performance for the purchase of a "Shelby Continuation Vehicle."  ("Vehicle Purchase Agreement")  It appears that defendant Shelby Licensing holds the right to make and sell Shelby Continuation Vehicles

2

and provides licenses to others to make and sell these cars.  An entity named Unique

Performance, Inc. ("Unique Performance") holds such a license from Shelby Licensing to utilize

the Shelby trademarks in connection with the manufacture of Shelby Continuation Vehicles.

The Vehicle Purchase Agreement between plaintiff and Trent Performance states that Unique

Performance was to manufacture plaintiff's Shelby Continuation Vehicle (the "Shelby Vehicle").

Plaintiff provides an affidavit stating he initiated contact with Trent Performance to

purchase the Shelby Vehicle.  Plaintiff states he saw Trent Performance's advertisement on the

Internet.  Franks' Affidavit at ¶ 4.

According to the Vehicle Purchase Agreement, the Shelby Vehicle was to be produced in

three phases:  (1) vehicle preparation and paint; (2) power train installation and mechanical

assembly; and (3) final assembly, completion and delivery.  The Vehicle Purchase Agreement

further provides that plaintiff was to pay $109,000 "plus the price of options, if any" as well as

all applicable taxes and shipping charges.  All payments under the contract were to be made to

Trent Performance.  Upon execution of the Vehicle Purchase Agreement, plaintiff was required

to make a non-refundable cash deposit of $54,500.  An additional non-refundable cash payment

of $27,250 was due within ten days of "notification of being ready for commencement of

Vehicle Preparation & Paint."  The final $27,500 was also to be non-refundable and was due

within ten days of "notification of being ready for commencement of Final Assembly &

Completion."  Once the initial $54,500 was received by Trent Performance, the payment was

apparently to be paid over to Unique Performance.

The Vehicle Purchase Agreement provides that Unique Performance's

> obligation to commence production of The Shelby Continuation
> Vehicle for Dealer/Purchaser is conditioned upon Dealer paying to

3

Unique Performance the Total 50% Initial Cash Deposit subject to the Unique Performance Dealer Manual.  Further, Unique Performance's obligation to deliver The Shelby Continuation Vehicle to Dealer/Purchaser is conditioned upon Dealer making timely payment of all payments required under this Purchase Order subject to the Unique Performance Dealer Manual.

***

Once the initial 50% Cash Deposit is received by Dealer [Trent Performance], and in turn received by Unique Performance pursuant to the Unique Performance Dealer Agreement, Unique Performance will allocate a specific serial number … to the vehicle being purchased and give written notice to Buyer of the specific serial number assigned to Buyer.

While the Vehicle Purchase Agreement is between plaintiff and Trent Performance, it provides that if plaintiff fails to make any of the payments when due he would be in "material breach" and that plaintiff "agrees that (i) Dealer [Trent Performance], Unique Performance and Carroll Shelby Licensing shall be forever relieved of and discharged from any obligation to Purchaser [Mr. Franks] under this Purchase Order …"  Plaintiff also agreed to indemnify and hold harmless both Trent Performance and Unique Performance from and against any and all claims arising from any use of the Shelby Vehicle occurring "after the date Unique Performance makes delivery F.O.B. Farmers Branch, Texas."

The Shelby Vehicle was sold "F.O.B. Farmers Branch, Texas at Unique Performance's production facility.  Unique Performance shall arrange for delivery to Dealer at this point.  If Dealer instructs Unique Performance to ship The Shelby Continuation Vehicle, then shipping shall be under a straight bill of lading, naming Dealer, and risks of loss will pass to Dealer upon Unique Performance's delivery to Dealer's shipper F.O.B. Farmers Branch, Texas."

The Vehicle Purchase Agreement also includes a warranty from Unique Performance to plaintiff.  The agreement states that "Unique Performance warrants that the parts and

4

components comprising the Shelby Continuation Vehicle sold under the Purchase Order will be free from  defects in material and workmanship for a period of six (6) months from the date of delivery to the Dealer …"

Finally, the Vehicle Purchase Agreement states that "the venue for any dispute arising out of or under this Agreement shall be the state or federal courts located in Dallas County, Texas."

In conjunction with the Vehicle Purchase Agreement, a "Build Specifications Sheet" was also prepared.  This document has the Unique Performance logo at the top and Unique Performance's contact information at the bottom.  It includes spaces for three signatures:  that of the dealer (here, Trent Performance), the purchaser and Unique Performance.  A representative of Trent Performance signed the Build Specifications Sheet on July 28, 2005.  Mr. Franks signed it one day later.  It appears that a representative of Unique Performance signed the document on August 20, 2005.  The Build Specifications Sheet details the equipment to be installed on plaintiff's Shelby Vehicle and the cost of each piece of equipment.

On July 28, 2005, defendant Charley Lewis – as vice president of sales for Trent Performance – sent a letter to Mr. Franks on Trent Performance letterhead.  The letter thanks Mr. Franks for his business and states "[w]e look forward to the satisfactory completion of your vehicle and will work diligently to assure that you are not disappointed."  The letter also provides that Trent Performance "will accept your 2000 Boxster as a trade for $22,000.  …  Also include in the remittal the title to your Boxster, assigning ownership to "Trent Cadillac".  After we have received, we will make arrangements to pick up your Boxster."  Plaintiff's affidavit states that his Boxster was picked up from his residence in Ohio.

5

A second Build Specifications Sheet was prepared at a later time.  While the first Build Specifications Sheet did not include any upgrades, the second one provided for upgrades totaling $28,100.  This document is not signed by any of the parties.  Plaintiff states in his Complaint that the second Build Specifications Sheet was prepared on February 24, 2006.

In accordance with the Vehicle Purchase Agreement, plaintiff did in fact make the first 50% payment for the Shelby Vehicle.  He assigned the title of his Porsche Boxster to Trent Cadillac and he paid the remainder of the 50% deposit in cash.  The Boxster was delivered by plaintiff to one of the Trent entities in Fairview Park, Ohio.

On September 12, 2006, Trent Performance delivered an invoice to Mr. Franks for the next 25% installment.  The invoice states that this installment was due, consistent with the Vehicle Purchase Agreement, because "vehicle preparation" was being "commenced."  The check was to be made payable to Trent Performance, LLC.  Mr. Lewis is identified as the sales person and contact for any questions.  The invoice indicates in handwriting that the installment was paid by check on January 10, 2007.

On December 7, 2006, plaintiff received a "form letter" addressed to "dear customer" (the "December 7 Letter").  The letter was signed by Mr. Deichmann, Mr. Lewis and Mr. Shelby.  It appears to have been composed by Mr. Deichmann.  It states that:

> Charley [Lewis] and I have been very concerned about Unique's failure to live up to its schedules and promises.  We have been prodding the team for results and also for accurate information.  We were encouraged last week when I was told … that sold schedules for completion would be forthcoming.  Now I've received mixed signals and I am going to work … to confirm the actual situation.  I will be at the plant on Wednesday to confirm with my own eyes what is going on there …  I have talked to Carroll Shelby about the situation and he is totally supportive of my efforts.  We will contact you on my return and I thank you again for your support.

6

On December 15, 2006, plaintiff received a second letter addressed to "dear customer" and signed by Mr. Deichmann and Mr. Lewis (the "December 15 Letter").  This letter states:

> We visited the Unique Performance facility in Farmers Branch, TX, yesterday, and wanted to follow up with you on the status of production of your vehicle.  Although there have been some delays in production overall, we did see a great deal of activity on the shop floor, and cars were being built.  We spoke to several employees, not just management, and it appears that they are working full-time on creating these top-of-the-line models.
> Three of Unique's officers provided us with reasonable explanations of material delays … and we left with assurances that Unique Performance continues to be in a position to fulfill all of its obligations …
> We hope to bring you further updates on the production of your individual vehicle as I receive information from Unique Performance.

Plaintiff's affidavit states he received additional communications from Mr. Lewis and Mr. Deichmann concerning, for example, amended delivery dates for his Shelby Vehicle.  Franks' Affidavit at ¶ 10.  Mr. Lewis and Mr. Deichmann state that all of these communications were via telephone, mail, or fax.  Neither Mr. Lewis nor Mr. Deichmann traveled to Ohio in connection with the contract to provide Mr. Franks a Shelby Vehicle.

To date, the Shelby Vehicle has not been delivered to plaintiff.  All of Unique Performance's assets, including Shelby Continuation Vehicles, are currently in the possession of the police department of Farmers Branch, Texas as a result of Unique Performance's bankruptcy filing.

Plaintiffs' Complaint asserts the following causes of action:  (1) breach of contract against Trent Performance, Trent Olds and Shelby Licensing; (2) promissory estoppel against Trent Performance; (3) fraud against Mr. Lewis, Mr. Deichmann, Mr. Shelby and Trent Performance; and (4) civil conspiracy to commit fraud against Trent Performance, Trent Olds,

7

Shelby Licensing, Mr. Lewis, Mr. Deichmann and Mr. Shelby.

All defendants now move to dismiss the case for want of personal jurisdiction.  The Trent Defendants move in the alternative for a transfer of venue.  Plaintiff opposes each of the motions.

### STANDARD OF REVIEW

**I.**      **Personal Jurisdiction**

The Due Process Clause of the Fourteenth Amendment operates to limit the power of a State to assert in personam jurisdiction over a nonresident defendant.  *Pennoyer v. Neff*, 95 U.S. 714 (1878).  Presented with a motion to dismiss for lack of personal jurisdiction and opposition thereto, "a court has three procedural alternatives:  it may decide the motion upon the affidavits alone;  it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions."  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  The court has discretion to decide which method it will follow.  *Id.* However the court handles the motion, the plaintiff always bears the burden of establishing that jurisdiction exists.  *Serras v. First Tennessee Bank National Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).  If the defendant supports his motion to dismiss with affidavits, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.  *Theunissen*, 935 F.2d at 1458 (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974).

In the absence of an evidentiary hearing, the court must view the pleadings and affidavits in the light most favorable to the plaintiff and not consider the controverting assertions of defendant.  *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721-22 (6th Cir. 2000).  Thus, the

plaintiff's burden is only that of making a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal. *Id.*; *see also Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) ("When the district court dismisses a complaint pursuant to Rule 12(b)(2) without conducting an evidentiary hearing on the issue of personal jurisdiction ... the plaintiff need only make a *prima facie* showing of jurisdiction ... [and the court] will not consider facts proffered by the defendant that conflict with those offered by the plaintiff ..."). This burden is "relatively slight." *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988). A *prima facie* showing is made by "establishing with reasonable particularity sufficient contacts between [defendant] and the forum state to support jurisdiction." *Neogen Corporation v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (internal citations omitted). Under this standard, dismissal is "proper only if all the specific facts which the plaintiff ... alleges collectively fail to state a *prima facie* case for jurisdiction." *Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 149 (6th Cir.1997) (quoting *Theunissen*, 935 F.2d at 1458) (emphasis added by *Kerry Steel* court).

## II.      Transfer of Venue

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "[I]n ruling on a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988)). However, a transfer under § 1404(a) may not be granted when the district court does

9

not have personal jurisdiction over the defendants.  *Bunting ex rel. Gray v. Gray*, 2 Fed. Appx. 443 (6th Cir. 2001).

## DISCUSSION

### I.      Personal Jurisdiction

The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (internal quotations and citations omitted).  By requiring that individuals have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign, the Due Process Clause gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.  *Id.*

"In dealing with a diversity case, [the court] looks to the law of the forum state to determine whether personal jurisdiction exists.  The exercise of personal jurisdiction is valid only if it meets both the state long-arm statute and constitutional due process requirements."  *Calphalon*, 228 F.3d at 721-22 (internal citations omitted).  Ohio's long-arm statute provides in relevant part:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
> (1) transacting any business in this state;
> (2) contracting to supply services or goods in this state;
> (3) causing tortious injury by an act or omission in this state; [and]
> (4) causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state ...

10

Ohio Rev. Code § 2307.382(A).[1]

If the long-arm statute is satisfied, plaintiff must then establish that due process is met.  If plaintiff attempts to show that the Court has general jurisdiction over defendant, plaintiff must make "a showing that the defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant." *Kerry Steel*, 106 F.3d at 149.  Specific personal jurisdiction, on the other hand, exposes the defendant to suit in the forum state "only on claims that 'arise out of or relate to' a defendant's contacts with the forum." *Id.* (internal citations omitted).

To determine whether or not the Court has specific jurisdiction over a defendant, a three-part test is applied:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).  In other words, there must be a "relationship among the defendant, the forum, and the litigation" to support a finding of specific jurisdiction over a defendant.  *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414 (1984).  Defendant's "conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there."

---

[1]
> Plaintiff does not argue that any other provisions of the long-arm statute apply here.

11

*Burger King*, 471 U.S. at 474 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Even a single act can support jurisdiction so long as it creates a "substantial connection" with the forum rather than an "attenuated" one. *Burger King*, 471 U.S. at n.18.

A. *Specific Jurisdiction over the Trent Defendants*

As stated above, the Court will only possess personal jurisdiction over defendants if both the Ohio long-arm statute and due process are met. Plaintiff argues only that this Court has specific jurisdiction over the Trent Defendants.[2] Plaintiff first argues that the Trent Defendants

---

[2] While plaintiff argues in passing in his opposition to the Trent Defendants' motion that this Court "potentially" possesses general jurisdiction over Trent Performance and Trent Olds, he does not provide any authority in support of this position. Rather, he speculates that Trent Performance and/or Trent Olds have sold additional automobiles in Ohio. This speculation is insufficient to establish general jurisdiction. In support of the Court's conclusion on this point is a statement by Mr. Lewis. He declares that he has never sold another vehicle on behalf of Trent Performance to a customer in Ohio. In a supplemental declaration, he states that "[n]either Trent Performance nor, to my knowledge, Trent Olds-Cadillac-Buick, Inc. have engaged in any significant business with any Ohio residents or companies aside from Trent Performance's Agreement with Paul Franks." While this evidence does not conclusively establish that Trent Performance and Trent Olds do not have continuous and systematic contacts with Ohio, plaintiff provides no evidence of his own. It is plaintiff's burden to demonstrate

concede that the long-arm statute is met. In their motion to dismiss, the Trent Defendants state that "Plaintiffs will allege that they have established personal jurisdiction under Ohio's long-arm statute, Ohio Rev. Code § 2307.382, by transacting business within the state and by causing tortious injury. However, the exercise of jurisdiction would be improper under the due process clause of the United States Constitution." The Trent Defendants' motion to dismiss goes on to address only the constitutional dimension of personal jurisdiction. The Court declines to determine whether or not this statement is sufficient to concede that the long-arm statue is met. Because the Court concludes that the due process analysis is dispositive of the issue, it need not reach the long-arm question.

To establish that due process is met, plaintiff must show that defendant purposely availed itself of the privilege of acting in the forum state or causing a consequence in the forum state. *Southern Machine*, 401 F.2d at 381. Purposeful availment is shown by contacts proximately resulting from defendant's actions that create a "substantial connection" with the forum state, defendant's deliberate engagement in "significant activities" in the state, or defendant having created "continuing obligations" between himself and a resident of the forum state. *Kentucky Oaks*, 53 Ohio St.3d at 77 (citing *Burger King*, 471 U.S. at 475-76).

The Court has reviewed the various opinions relied upon by the parties and finds that those in which jurisdiction was found to be lacking are more analogous to the present case. In *Weldon F. Stump & Co., Inc. v. Delta Metalforming Co.*, 793 F.Supp. 157 (N.D. Ohio 1992) (Walinski, J.), an Ohio plaintiff and a Texas defendant entered into an agreement for plaintiff to sell a "tube rolling mill" to defendant. The mill was located in California. The parties

---

jurisdiction and, as to general jurisdiction, he has failed to meet his burden.

13

conducted their negotiations over the telephone. Defendant initiated several of the phone calls. Defendant also traveled to California to inspect the mill. Defendant refused to make final payment on the mill, alleging it was defective. Defendant and his attorney mailed three letters to Ohio complaining of the defects. Eventually, plaintiff filed suit in Ohio. The court found that purposeful availment was lacking: "the fact that the contract is coupled with telephone calls made by the defendant from an out-of-state location to the plaintiff in the forum state [does not] establish a substantial connection with the forum state." *Stump*, 793 F.Supp. at 160 (citing cases in support). The court also stated that, "where a non-resident defendant has entered into a contract which can be characterized as a one-shot deal or which does not anticipate creating an impact on the commerce of the forum state, it would not be fair to force that defendant to litigate there." *Id.* (citing cases).

In *Krutowsky v. Simonson*, 109 Ohio App.3d 367 (1996), an Ohio plaintiff owned a Rolls Royce automobile. He saw defendant's advertisement stating defendant was a restorer and repairer of vintage cars. Defendant was located in Illinois. The car was located in South Carolina. Plaintiff contacted defendant by telephone and they orally agreed that defendant would repair and restore plaintiff's car. Plaintiff shipped the car from South Carolina to Illinois. Plaintiff later traveled to Illinois to inspect the car and discuss the terms of the contract. After some work had been done, plaintiff became dissatisfied and filed suit in Ohio. The trial court found that the Illinois defendant did not purposefully avail himself of the forum and the appeals court affirmed. Applying the *Southern Machine* test, the court pointed out that it was plaintiff who initiated contact. The court also stated that a defendant does not "subject himself to Ohio's jurisdiction simply by advertising in a magazine with national circulation." Finally, the court

14

noted that the work on the automobile was performed in Illinois.  "The only intentional contact [defendant] had with Ohio was the mailing of invoices and reports to Ohio and also calling [plaintiff] in Ohio to occasionally give updates on the work.  Such actions, without more, do not rise to the level of minimum contacts."

In *Douglas v. Modern Aero, Inc.*, 954 F.Supp. 1206 (N.D. Ohio 1997) (Carr, J.), an Ohio plaintiff entered into a contract to purchase an airplane from Minnesota.  The Minnesota defendants had advertised the availability of the plane to a broker in California.  The California broker served as an intermediary between the Minnesota seller and Ohio buyer.  The airplane was delivered to Ohio where plaintiff discovered discrepancies between the reported condition and the actual condition of the plane.  While the court found that the Minnesota defendants had "transacted business" under Section (A)(1) of Ohio's long-arm statute, the court determined that defendants had not "purposely availed" themselves of the forum.  The court reasoned that entering into a contract and communicating only via telephone, fax and mail did not constitute the "substantial connection" necessary to establish purposeful availment.  The court also concluded that purposeful availment could not be shown by any "continuing obligations" in the contract.  The court characterized the agreement as a "one-shot deal."

The instant case is similar to those cases detailed above.  Trent Performance - and its privies Mr. Deichmann and Mr. Lewis - were solicited by Mr. Franks after he saw a national advertisement on the Internet.  They never traveled to Ohio or met in person with Mr. Franks in connection with the Vehicle Purchase Agreement.  They communicated only by telephone and mail and other "ancillary" forms of communication.  Trent Performance's agents traveled only to Texas to inspect the Shelby Vehicle.  And, the agreement between the parties was a "one-shot

15

deal." There were no ongoing obligations once the Shelby Vehicle was paid for and delivered to Texas.[3]

Trent Olds' contacts with Ohio are also too attenuated to establish purposeful availment. It traveled - according to the facts construed in the light most favorable to plaintiff - to Ohio to take possession of and title to plaintiff's Porsche Boxster. The Boxster was in part payment for the contract entered into between plaintiff and Trent Performance. Trent Olds had no other contact with plaintiff or the forum. This single contact is neither "substantial" nor "significant" enough to subject Trent Olds to the jurisdiction of this Court. *Cf. Highway Auto Sales, Inc. v. Auto-Konig of Scottsdale, Inc.*, 943 F.Supp. 825, 831 (N.D. Ohio 1996) (delivering defective Ferrari to Ohio, together with entering into contract over the phone and advertising nationally, was insufficient to establish purposeful availment).

Because plaintiff has failed to show that the Trent Defendants purposefully availed themselves of the forum, the Court grants the Trent Defendants' motion to dismiss.

B.      *Jurisdiction over Shelby Licensing*

Plaintiff puts forth two positions in support of jurisdiction over Shelby Licensing: (1) Shelby Licensing has provided a trademark license to an entity named JBS Technologies, LLC ("JBS") to manufacture Shelby brand car alarms and other products in Ohio; and (2) Unique Performance, as a trademark licensee of Shelby Licensing, is an agent of Shelby Licensing and can therefore bind Shelby Licensing to plaintiff.

---

[3]
        The Court is not unsympathetic to plaintiff's plight.  However, the weight of authority dictates a finding that jurisdiction is lacking.  The cases relied upon by plaintiff in which jurisdiction existed involved more substantial contacts with Ohio or ongoing relationships with plaintiff in the forum.

16

As to JBS, plaintiff argues that Shelby Licensing is either "transacting business" in Ohio or "regularly does or solicits business" in Ohio by virtue of its relationship with JBS.  Ohio Rev. Code §§ 2307.382(A)(1), (4).[4]  JBS manufactures Shelby brand car alarms and other products in Ohio.  Assuming without deciding that the long-arm statute is met, this cause of action does not "arise out of" Shelby Licensing's connection to JBS nor JBS' activities in the state.  *Southern Machine*, 401 F.3d at 381 (second prong of three-part test is that plaintiff show the cause of action arises out of defendant's activities in the forum state).  Therefore, plaintiff cannot show that this Court has specific jurisdiction over Shelby Licensing by reason of its relationship with JBS.

Neither has plaintiff shown that this Court may exercise *general* jurisdiction over Shelby Licensing by virtue of its licensing agreement with JBS.  Entering into a trademark licensing agreement is insufficient to create general jurisdiction over a defendant.  *See Martin v. Clemson Univ.*, 2007 U.S. Dist. LEXIS 93703 (E.D. Pa. Dec. 21, 2007) (entering into trademark licensing agreements with entities in forum state, together with other activities, insufficient to establish general jurisdiction).

With respect to Unique Performance, plaintiff argues that Shelby Licensing has "contracted to supply services or goods" in Ohio because Unique agreed to build a car for plaintiff.  Ohio Rev. Code § 2307.382(A)(2).  Plaintiff's contention would require this Court to find that Shelby Licensing contracted with him through its agent Unique Performance to supply

---

[4]

Plaintiff also speculates that Shelby Licensing does business with Ford Motor Company in Ohio but provides no evidence of this relationship.  He states that such evidence will be developed through discovery.

17

a car to Ohio.  This position is without merit because the Vehicle Purchase Agreement provides that the car be tendered to plaintiff in Texas.  Moreover, plaintiff must demonstrate that Unique Performance, in agreeing to manufacture plaintiff's Shelby Vehicle, was acting as an agent of Shelby Licensing.  This, plaintiff cannot do.

The cases establish that a licensor's duty under the Lanham Act to retain some control over the use of his trademark to ensure retention of its value does not impose on that licensor a principal/agent relationship in unrelated matters.  In this regard, courts have stated:

> The purpose of the Lanham Act, however, is to ensure the integrity of registered trademarks, not to create a federal law of agency. Furthermore, the scope of the duty of supervision associated with a registered trademark is commensurate with this narrow purpose. The duty does not give a licensor control over the day-to-day operations of a licensee beyond that necessary to ensure uniform quality of the product or service in question.  It does not automatically saddle the licensor with the responsibilities under state law of a principal for his agent.

*Mini Maid Servs. Co. v. Maid Brigade Sys., Inc.*, 967 F.2d 1516, 1520 (11th Cir. 1992) (quoting *Oberlin v. Marlin American Corp.*, 596 F.2d 1322, 1327 (7th Cir.1979)).  By this reasoning, the Court concludes that Unique was not acting on behalf of Shelby Licensing when it agreed to make a car for plaintiff.

Plaintiff next argues that Shelby Licensing caused him tortious injury through the acts of Unique Performance.  *See* Ohio Rev. Code § 2307.382(A)(4).  Again, this argument rests on the assumption that Unique was an agent of Shelby Licensing for purposes of making plaintiff's car. This Court finds that it was not.

The Shelby Defendants' motion to dismiss is granted as to Shelby Licensing.

C.    <u>*Specific Jurisdiction over Mr. Shelby*</u>

18

Plaintiff's evidence establishes only a *single* contact between him and Mr. Shelby:  the

December 7 Letter authored by Mr. Deichmann.  The letter stated:

> Charley [Lewis] and I [Mike Deichmann] have been very concerned
> about Unique's failure to live up to its schedules and promises.  We
> have been prodding the team for results and also for accurate
> information.  We were encouraged last week when I was told … that
> sold schedules for completion would be forthcoming.  Now I've
> received mixed signals and I am going to work … to confirm the
> actual situation.  I will be at the plant on Wednesday to confirm with
> my own eyes what is going on there …  I have talked to Carroll
> Shelby about the situation and he is totally supportive of my efforts.
> We will contact you on my return and I thank you again for your
> support.

Plaintiff contends that this letter amounts to a contractual guarantee by Mr. Shelby and, as such,

rises to the level of "transacting business" in Ohio.  Ohio Rev. Code § 2307.382(A)(1).  Plaintiff

also argues that Mr. Shelby is subject to jurisdiction under Section (A)(4) of the long-arm

statute.

Even if Mr. Shelby's actions meet the requirements of the long-arm statute - an issue

upon which this Court does not opine - plaintiff has failed to demonstrate that Mr. Shelby

engaged in such "purposeful availment" as to subject himself to the power of the Ohio courts.[5]

The letter was addressed "Dear Customer."  There is no evidence that Mr. Shelby knew the letter

was mailed to any person in Ohio.  There is no evidence that Mr. Shelby and Mr. Franks have

ever communicated directly with one another.  Due process requirements are only satisfied when

a nonresident corporate defendant has certain minimum contacts with the forum such that the

maintenance of the suit does not offend traditional notions of fair play and substantial justice.

---

[5]
> Plaintiff fails to provide any legal support for his contention that the
> letter rises to the level of a contractual guarantee.

19

*International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *see also Krutkowski*, 109 Ohio

App.3d 367 (cited with approval in *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506 (6th Cir.

2006)).  Mr. Shelby's contact with Ohio does not satisfy the constitutional standard.[6]

The Shelby Defendants' motion to dismiss is granted as to Mr. Shelby.

## II.    Transfer of Venue

In the alternative to their motion to dismiss for lack of personal jurisdiction, the Trent

Defendants ask this Court to transfer the case to Texas pursuant to a forum selection clause in

the Vehicle Purchase Agreement entered into between plaintiff Mr. Franks and defendant Trent

Performance.  The Trent Defendants make their motion under 28 U.S.C. § 1404.[7]  Having

granted the Trent Defendants' motion to dismiss, the Court need not address their alternative

request that the case be transferred.

Plaintiff, for his part, asks in his opposition to the Shelby Defendants' motion to dismiss

that this case be transferred pursuant to 28 U.S.C. § 1406(a).  Plaintiff presents no legal

argument in support of his position.  And, plaintiff's request is made in opposition to the *Shelby*

*Defendants'* motion to dismiss.  The Shelby Defendants have not moved to transfer this cause; it

---

[6]

Plaintiff cannot establish general jurisdiction over Mr. Shelby, either. Plaintiff merely speculates that the Court "may" possess general jurisdiction over Mr. Shelby because he "arguably" has business contacts with the state of Ohio. Mr. Shelby's declaration establishes that he has only visited Ohio once in the last 20 years and that visit was for personal reasons.  He also states he does not maintain an office or bank account here and does not own any personal or real property in the state.

[7]

In their reply brief, the Shelby Defendants also suggest that transfer to the Northern District of Texas is warranted if jurisdiction is found. The Shelby Defendants fail to cite any statutory provision or other authority in support of their request.

is the Trent Defendants who so moved.  As a result, the Trent Defendants were not given an opportunity to respond to plaintiff's request.  For these reasons, the Court declines to address the merits of a transfer under 28 U.S.C. § 1406(a).

**CONCLUSION**

For the foregoing reasons, Trent Performance LLC, Trent Olds-Cadillac-Buick, Inc., G.L. Deichmann, III and Charley Lewis' motion to dismiss (Doc. 11) is GRANTED and Carroll Shelby and Carroll Shelby Licensing, Inc.'s motion to dismiss (Doc. 6) is GRANTED.  The case is dismissed without prejudice.

IT IS SO ORDERED.

 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 7/3/08